IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JEFFREY VINCE, Derivatively on )
Behalf of Nominal Defendant )
BIOVENTUS INC., )
  )
            Plaintiff, )
  )
    v. )                    1:24-CV-639
  )
KENNETH M. REALI, et al., )
  )
            Defendants, )
  )
and )
  )
BIOVENTUS INC., )
  )
            Nominal Defendant. )

## ORDER

The defendants seek to transfer this derivative action to the United States District Court for the District of Delaware.  Because there is an enforceable forum selection clause calling for such litigation to be heard in that court, the motion will be granted.

### I.    Facts

Bioventus is a medical device company incorporated in Delaware and based in Durham, North Carolina.  Doc. 21 at ¶¶ 2, 18.  Other defendants are or were officers or board members of Bioventus during the relevant time.  *Id.* at ¶¶ 19–33, 162.

On February 10, 2021, Bioventus adopted an Amended and Restated Certificate of Incorporation.  Doc. 25-1 at 6.  Article XIII of the certificate states in relevant part:

> Unless the Corporation consents in writing to the selection of an
> alternative forum, the Court of Chancery of the State of Delaware (or,

in the event that the Chancery Court does not have jurisdiction, the federal district court for the District of Delaware) shall be the sole and exclusive forum for any derivative action brought on behalf of the Corporation.

*Id.* at 18 (cleaned up). It further states that "[a]ny person or entity purchasing . . . any interest in any security of the Corporation shall be deemed to have notice of and consented to this Article XIII." *Id.* at 19. Bioventus included the amended certificate in its SEC registration statement filed the same day. Doc. 30 at ¶ 3; *see also* Doc. 30-1.

Bioventus conducted an initial public offering on February 11, 2021. Doc. 21 at ¶ 43. The plaintiff here alleges that the defendants made materially false statements in Bioventus's SEC registration statement, *id.* at ¶¶ 89–92, 127; *see also* Doc. 30-1, and in various SEC filings between February 2021 and August 2022. Doc. 21 at ¶¶ 93–121, 127. The plaintiff further alleges that as these false statements became public, Bioventus' stock dropped and then plummeted. *Id.* at ¶¶ 131, 134, 140, 149.

In January 2023, shareholders filed a class action against Bioventus in the United States District Court for the Middle District of North Carolina seeking damages. *See* Complaint, *Ciarciello v. Bioventus, Inc.*, No. 23-CV-32, Doc. 1 (M.D.N.C. Jan. 12, 2023). In October 2023, Mary Grogan filed a shareholder derivative suit against Bioventus directors and officers in the United States District Court for the District of Delaware. *See* Doc. 28-2 at 5; Complaint, *Grogan v. Reali*, No. 23-CV-1099, Doc. 1 (D. Del. Oct. 4, 2023). A second derivative suit was filed in the same Delaware court in February 2024. *See* Complaint, *Sanderson v. Reali*, No. 24-CV-180, Doc. 1 (D. Del. Feb. 9, 2024). The two Delaware suits were consolidated in May 2024. *See* Doc. 28-2 at 6; Order, *Grogan v.*

*Reali*, No. 23-CV-1099, Doc. 13 at p. 5 ¶ 3 (D. Del. May 2, 2024).  The consolidated action in Delaware was stayed pending final resolution of the motion for class certification in *Ciarciello*.  *See* Doc. 28-2 at 6; Order, *Grogan*, No. 23-CV-1099, Doc. 13 at ¶ 12 (staying case on same terms as January 2024 order); Doc. 28-1 (*Grogan* January 2024 stay order).

The plaintiff here filed the instant shareholder derivative lawsuit in this district in July 2024.  *See* Doc. 1.  It is undisputed that his claims are against many of the same defendants and based on the same allegations as in *Grogan* and *Sanderson*.

This Court preliminarily approved a class action settlement in *Ciarciello* in August 2024.  No. 23-CV-32, --- F. Supp. 3d ---, 2024 WL 3802990 (M.D.N.C. Aug. 13, 2024).  Final approval occurred in December 2024.  --- F. Supp. 3d ---, 2024 WL 5155539 (M.D.N.C. Dec. 18, 2024).

The defendants now move to transfer this case under 28 U.S.C. § 1404(a) to the United States District Court for the District of Delaware.  Doc. 23.  The defendants rely on the forum selection clause in Bioventus's amended certificate of incorporation.

## II.    Motions to Change Venue and Forum Selection Clauses

Motions to change venue are generally evaluated pursuant to 28 U.S.C. § 1404(a), which permits district courts to transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented."  In evaluating a motion to transfer under § 1404(a), courts consider the following factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and

access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see also Oldham v. Pa. State Univ.*, 507 F. Supp. 3d 637, 647 n.4 (M.D.N.C. 2020). A forum selection clause is "a significant factor that figures centrally" in the § 1404(a) analysis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Courts will enforce a forum selection clause as long as it is mandatory and reasonable. *See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018). "A mandatory clause requires litigation to occur in a specified forum." *Id.* (citing *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650–51 (4th Cir. 2010)). Courts look to the language in the forum selection clause to determine its scope, *see Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 674 (4th Cir. 2018), and they enforce such a clause as mandatory if it includes language indicating the parties' intent to make the particular forum the exclusive venue for litigation. *See Albemarle*, 628 F.3d at 650–51.

Courts use a four-factor test to assess whether forum selection clauses are reasonable. They ask whether:

> (1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (cleaned up); *accord, e.g.*, *Albemarle*, 628 F.3d at 651.

4

A reasonable mandatory forum selection clause "is 'given controlling weight in all but the most exceptional cases,' and the plaintiff bears the burden of proving why it should not be enforced." *BAE Sys.*, 884 F.3d at 471 (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013)). "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Atl. Marine*, 571 U.S. at 64. Under a § 1404(a) analysis, this waiver leaves only the "public-interest factors" related to the interest of justice which is, "[i]n all but the most unusual cases, . . . served by holding parties to" the forum selection clause. *Id.* at 64, 66; *accord Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 209–10 (4th Cir. 2022).

## III.    Discussion

Here, the forum selection clause is enforceable. The provision is mandatory because it provides that courts in Delaware are "the sole and exclusive forum" for a derivative action. Doc. 25-1 at 18. It is reasonable because Bioventus is incorporated in Delaware and there is no evidence that the forum selection clause was induced by fraud, that the plaintiff will be deprived of a day in court or a remedy upon transfer, or that its enforcement contravenes a strong public policy. *See Allen*, 94 F.3d at 928.

The interests of justice favor transfer. This derivative action arises from the same events alleged in the pending consolidated derivative action in Delaware. Transferring this case to join the Delaware cases is more efficient for the parties and the courts. *See Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 110 (4th Cir. 2022) (noting it makes "little sense" to have the same parties litigating identical allegations in different courts).

In opposition to transfer, the plaintiff contends that the defendants waived the forum selection clause by not insisting on a Delaware forum during discussions between counsel before this case was filed.  Doc. 27 at 10–12; Doc. 28 at ¶¶ 8–9.  But the plaintiff cites no case law for the proposition that a litigant waives the forum selection clause by failing to raise it in private discussions before a complaint is filed.  Once service was obtained on the defendants in late October of 2024, *see* Doc. 20, the defendants filed the motion to change venue within a few weeks.  *See* Doc. 23 (motion to transfer filed 11/11/2024).  There has been no waiver.

The plaintiff also contends that enforcing the forum selection clause because of a "collusive [s]ide [a]greement" would violate the public policy of North Carolina.  Doc. 27 at 12–16.  The so-called "side agreement" is in the form of a letter to and from counsel in *Grogan* memorializing an agreement that Bioventus would move to transfer any derivative litigation filed against it elsewhere to Delaware.  Doc. 25-2 at 2.  Use of the pejorative word "collusive" is little more than an opinion of counsel, and there is nothing facially irrational, dishonest, or collusive about agreeing to take action to have all derivative lawsuits heard in the same court.

The plaintiff points out that if this case is transferred, the Delaware plaintiffs will unfairly reap the benefits of the work done by the plaintiff and counsel in this case.  Doc. 27 at 13.  That may be so.  But the Delaware court can sort through issues of representation after transfer.  There is no public policy reason to deny transfer.

The plaintiff further contends that the forum selection clause is invalid because it was adopted after most of the alleged wrongdoing occurred.  *Id.* at 16–18.  But that

argument is not supported by evidence.  The amended certificate with the forum selection clause was adopted on February 10, 2021.  Doc. 25-1 at 6.  The alleged false statements began in the SEC registration statement filed the same day, Doc. 21 at ¶¶ 89–92, 127; *see also* Doc. 30-1, and continued in other SEC filings from February 2021 to August 2022.  Doc. 21 at ¶¶ 93–121, 127.  The alleged false statements all took place at the same time or after the forum selection clause went into effect.

Finally, the plaintiff contends that the interests of justice weigh against transfer because this Court is more familiar with the allegations than the court in Delaware.  Doc. 27 at 18–19.  This court is familiar with the allegations because of the *Ciarciello* case, but that case had not reached the merits stage when it settled.  There is no reason to think that the Delaware court will not quickly get up to speed.

The forum selection clause is mandatory and reasonable, and the interests of justice favor transfer.  The motion to transfer will be granted.

It is **ORDERED** that:

1. The defendants' motion to transfer under 28 U.S.C. §1404(a), Doc. 23, is **GRANTED**.

2. The Clerk of Court **SHALL** transfer this matter and all necessary documents to the United States District Court for the District of Delaware.

This the 14th day of January, 2025.

UNITED STATES DISTRICT JUDGE

7